**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| AARON EDWARD STRONG, | : | |
| Plaintiff, | : | |
| v. | : | Case No. 5:24-cv-349-CAR-AGH |
| Warden TIMOTHY SALES, *et al.*, | : | |
| Defendants. | : | |

## ORDER & RECOMMENDATION

Before the Court are Plaintiff's motions to reconsider appointment of counsel (ECF No. 25) and to appoint counsel (ECF No. 40). Also before the Court is Defendant Sales' motion to dismiss (ECF No. 24). For the reasons stated below, it is recommended that Defendant Sales' motion be granted and that Defendant Sales be dismissed from this action. Plaintiff's motions regarding counsel are denied.

## BACKGROUND

Plaintiff's claims arise from his incarceration at Macon State Prison ("MSP"). Compl. 5, ECF No. 1. He alleges that he fell in the shower the first week of August 2023 and seriously injured his shoulder. *Id.* Plaintiff suggests that MSP prison officials caused this fall in two ways. First, Plaintiff contends prison officials failed to provide him adequate medical treatment for a previous injury to the medial collateral ligament ("MCL") of his knee. *Id.* Because prison officials failed to properly treat this injury, Plaintiff's knee gave out in the shower and caused his fall. *Id.* Plaintiff further indicates that his MCL injury is "ongoing," and prison officials still

have not properly treated it. *Id.*; Am. Compl. 1-2, ECF No. 11. Second, Plaintiff appears to contend that prison officials did not allow him to shower in an Americans with Disabilities Act ("ADA")-compliant shower stall. Compl. 5. Thus, Plaintiff had no grab bars with which he could have broken his fall, and "all [his] body weight landed on [his] left arm and side[,]" causing the injuries to his shoulder. *Id.*

On July 1, 2025, the Court allowed Plaintiff's deliberate indifference and ADA claims against Defendants to proceed for further factual development and recommended dismissing remaining claims. Order & R. 11, ECF No. 12. Defendant Sales filed a motion to dismiss on December 1, 2025 (ECF No. 24). The Court notified Plaintiff of his right to respond to Defendant Sales' motion on March 20, 2026 (ECF No. 31), but Plaintiff failed to respond. Plaintiff did, however, file a motion to reconsider appointment of counsel (ECF No. 25) and a motion to appoint counsel (ECF No. 40). Defendant Sales' motion to dismiss and Plaintiff's motions are ripe for review.

**DISCUSSION**

**I. Motions to Appoint Counsel**

Before the Court is Plaintiff's motion for reconsideration regarding appointment of counsel (ECF No. 25) and his motion to appoint counsel (ECF No. 40). In relevant part, Plaintiff claims that appointed counsel is necessary because "this onus process" has "burdened [him] with complexities of a legal juggernaught [sic] being caught in a maze-quagmire-like-stoop." Mot. Recons. 1, ECF No. 25. He asks for "an assigned counsel to assist [him] for medical treatment [he is] being denied." *Id.* Furthermore, Plaintiff claims that nerve damage from his shoulder injury is

limiting his ability to write briefs because writing extensively causes his hands to tingle. Mot. Appoint Couns., ECF No. 40. For the following reasons, Plaintiff's motions are denied.

A district court "may request an attorney to represent any person unable to afford counsel."[1] 28 U.S.C. § 1915(e)(1). There is, however, "no absolute constitutional right to the appointment of counsel" in a § 1983 lawsuit. *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987). Appointment of counsel is "instead a privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." *Id.* In determining whether a case presents extraordinary circumstances, the Court considers:

> (1) the type and complexity of the case; (2) whether the plaintiff is capable of adequately presenting his case; (3) whether the plaintiff is in a position to adequately investigate the case; (4) whether the evidence "will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination"; and (5) whether the appointment of counsel would be of service to the parties and the court "by sharpening the issues in the case, shaping the examination of witnesses, and thus shortening the trial and assisting in a just determination." The District Court may also inquire into whether the plaintiff has made any effort to secure private counsel.

*DeJesus v. Lewis*, 14 F.4th 1182, 1204-05 (11th Cir. 2021) (quoting *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982)).

The Court considered Plaintiff's motions and—after applying the factors set forth above—concludes that appointed counsel is not justified. Plaintiff has

---

[1] The statute, however, does not provide any funding to pay attorneys for their representation or authorize courts to compel attorneys to represent an indigent party in a civil case. *See Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 310 (1989) (holding that federal courts may not "make coercive appointments of counsel" under § 1915).

demonstrated the ability to litigate his case, including filing pleadings and motions sufficiently setting out his contentions to allow review by the Court. Further, Plaintiff has been able to hand-write his own pleadings since September 25, 2024, when he first filed his complaint (ECF No. 1). Given that his alleged injury took place in August 2023, Plaintiff has been drafting his own pleadings—while injured—for over two years. Plaintiff, "like any other litigant[], undoubtedly would [be] helped by the assistance of a lawyer, but [his] case is not so unusual" that appointed counsel is necessary. *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). Plaintiff's motions for reconsideration (ECF No. 25) and to appoint counsel (ECF No. 40) are consequently denied.

## II. Defendant's Motion to Dismiss

Defendant Sales moves to dismiss Plaintiff's claims for three reasons. First, Defendant Sales argues that Plaintiff fails to state an Eighth Amendment deliberate indifference claim, and that he fails to state a claim under Title II of the ADA. Sales Br. Supp. MTD 4-6, 9-11, ECF No. 24-1 ("Sales Br."). Second, Defendant Sales alleges that qualified immunity bars Plaintiff's individual capacity deliberate indifference claim. *Id.* at 7-8. Third, Defendant Sales claims that Eleventh Amendment immunity bars Plaintiff's claim under Title II of the ADA. *Id.* at 8-9. As discussed below, the Court finds that Plaintiff fails to state a claim for deliberate indifference against Defendant Sales in his official capacity, and Defendant Sales is entitled to qualified immunity, barring Plaintiff's deliberate indifference individual capacity claim. Additionally, Defendant Sales' entitlement to Eleventh Amendment immunity bars Plaintiff's ADA claims. Therefore, it is recommended that Defendant Sales'

motion to dismiss be granted (ECF No. 24) and Defendant Sales dismissed from this action.

A. Standard of Review

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Rule 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In other words, a motion to dismiss "tests the facial sufficiency" of a complaint. *Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, at *2 (11th Cir. 2023). "A complaint survives a Rule 12(b)(6)-based motion only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face." *Bess v. Dental Scheduling Ctr. Inc.*, 710 F. Supp. 3d 1295, 1301 (M.D. Ga. 2023) (citing *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018)). While Courts must take all factual allegations as true when ruling on a motion to dismiss, they are not bound to accept a legal conclusion that is couched as a factual allegation. *Iqbal*, 556 U.S.

at 678. Allegations that are conclusory in nature "disentitles [the plaintiff] to a presumption of the truth." *McCullough*, 907 F.3d at 1333.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a "right, privilege, or immunity" secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a "person acting under color of state law[.]" *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See, e.g.*, *Bingham v. Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

B. Plaintiff's Deliberate Indifference Claim

Defendant Sales asserts that Plaintiff failed to state a claim against him for deliberate indifference. Defendant Sales also argues that he is entitled to qualified immunity. The Court agrees. Thus, Plaintiff's deliberate indifference claims against Defendant Sales should be dismissed.

*i. Plaintiff Does Not State a Claim for Deliberate Indifference Against Defendant Sales*

To state a claim for deliberate indifference, a plaintiff must allege facts showing "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann*

*v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009) (citation omitted). The first element, a serious medical need, is assessed objectively:

> [A] serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention . . . In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm.

*Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation marks and citations omitted).

For the second element—deliberate indifference—a plaintiff must plausibly allege facts showing that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law[.]'" *Wade*, 106 F.4th at 1255 (first citing *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020); and then quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)). Subjective awareness requires that the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (citing *Farmer*, 511 U.S. at 837). To show that a particular "defendant acted with 'subjective recklessness as used in the criminal law'" the plaintiff must allege facts showing "that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm[.]" *Wade*, 106 F.4th at 1255. Whether the defendant was subjectively aware of a serious risk of harm "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence[,] . . . and a factfinder may conclude that a prison official knew of a

substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

The final element requires the "defendant [to] have a causal connection to the constitutional harm." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (citation omitted) (explaining that prisoner "must show that the injury was caused by the defendant's wrongful conduct" to establish the third element of a deliberate indifference claim).

Defendant Sales argues that Plaintiff's claim fails at the subjective element. According to Defendant Sales, Plaintiff failed to plausibly allege that Defendant Sales was subjectively aware that his own conduct caused Plaintiff a substantial risk of serious harm. Sales Br. 6. The Court agrees. Plaintiff makes no allegations of deliberate indifference against Defendant Sales in his initial complaint or his amended complaint. The allegations in Plaintiff's amended complaint only mention informing "medical person[ne]l," "Warden Jeffries," and "medical staff" of his injury and accompanying pain. Am. Compl. 1-2. Because Defendant Sales is not among that list, Plaintiff has not plausibly alleged that Defendant Sales had subjective knowledge of Plaintiff's medical needs.

Moreover, the attachments to Plaintiff's amended complaint do not support his claim. "[A]n attachment to a complaint generally becomes 'part of the pleading for all purposes[.]'" *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) (quoting Fed. R. Civ. P. 10(c)). Therefore, "[i]n deciding whether a complaint states a claim upon which relief may be granted, we normally consider all documents that are attached to the complaint or incorporated into it by reference." *Id.* This rule also

applies when the Court considers motions to dismiss. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (stating that a "court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss"); *Knott v. McLaughlin*, No. 5:17-cv-36-MTT-CHW, 2017 WL 6820151, at *1 (M.D. Ga. Nov. 1, 2017) ("The Court may consider the memorandum along with Plaintiff's Complaint for purposes of resolving the Defendant's Motion [to Dismiss]."), *recommendation adopted* 2018 WL 327288 (M.D. Ga. Jan. 8, 2018). Even liberally construed, these attachments fail to support a claim for deliberate indifference against Defendant Sales.

First, in Grievance 356419, Plaintiff complains that his requests for emergency treatment for his "swelling" and "constant" pain have been ignored. Am. Coml. Attach. 4, ECF No. 11-2. The Warden or Superintendent[2] responded to this grievance on September 4, 2023, explaining that Plaintiff was "seen for all 9 of his sick calls" and that "[h]e never mentioned anything in reference to his leg." *Id.* at 5. Additionally, Plaintiff was seen on August 25, 2023, "about his leg," where "[a]n order was written for an x-ray and a shot was administered for his pain." *Id.* This grievance is dated August 9, 2023, the week after Plaintiff's fall. Am. *Id.* Because this grievance was filed after Plaintiff's fall, the grievance fails to support an allegation that Defendant Sales was subjectively aware of Plaintiff's conditions before his fall. Moreover, the grievance response illustrates that Plaintiff did receive treatment for his injuries, contrary to his assertions.

---

[2] It is unclear based upon the signature on the grievance response whether Defendant Sales is the signatory. Am. Coml. Attach. 5. Nonetheless, out of an abundance of caution, the Court considered this attachment.

Next, in a September 28, 2023 letter to Defendant Sales, Plaintiff recounts how, "[f]or a period of more than 57 days[,]" he has "been dealing with torment from falling in the shower and landing on [his] left shoulder." Am. Coml. Attach. 7. He further explains that, in the first week of September, "an x-ray was done on [his] (R) Knee[,]" when he "begged for an MRI." *Id.* On September 21, 2023, medical staff rescheduled his appointment to review the x-ray results. *Id.* Then, on September 28, 2023, Plaintiff was "not on the list to see a provider for the results of [the] x-ray[,]" and he lamented that he was still in pain. *Id.* This letter places Defendant Sales on notice of Plaintiff's injuries only <u>after</u> the fall occurred. And subsequent attachments undermine Plaintiff's theory that Defendant Sales was deliberately indifferent to his medical needs post-fall. *See Gill*, 941 F.3d at 511 ("[A] litigant may be defeated by his own evidence, the pleader by his own exhibits when he has pleaded too much and has refuted his own allegations by setting forth the evidence relied on to sustain them.") (internal citation and quotations omitted)).

By Plaintiff's own admission, MSP staff treated his injuries in multiple ways. First, Plaintiff received at least two separate sets of x-rays and an MRI. In a letter to Defendant Jeffries dated November 25, 2023—less than one month after his letter to Defendant Sales—Plaintiff explains that he "took an x-ray and an eventual MRI[.]" Am. Compl. Attach. 14. He also had another set of x-rays taken of his patella in July 2023. *Id.* at 19. Second, Plaintiff received physical therapy for his injuries. In Grievance 367586, Plaintiff states that he attempted "therapy" but stopped because "the pain would not subside." *Id.* at 17. In a letter to Defendant Maxey, he first describes his cycling therapy, and claims that it "created more pain" which "caused

the therapy to come to a stop." *Id.* at 30. In another letter to Maxey, Plaintiff indicates that this therapy "was suggested by Doctor Andrews," and that "after a couple of efforts, it was more painful to use bicycle pedals while exercising the entire leg muscles." *Id.* at 18. Defendant Sales' response to Grievance 367586 clarifies that Plaintiff "was receiving proper medical attention, but [Plaintiff] chose to stop attending physical therapy." *Id.* at 21.[3] Third, Plaintiff received pain medication. In a letter dated June 20, 2024, Plaintiff thanks Dr. Andrews "for the pain pills (methylprednisolone)[,]" which he then claims "[did] not stop the pain[.]" Am. Compl. Attach. 22, 25.

Nowhere in his complaint or in the attachments does Plaintiff articulate—let alone allege—how, why, or when Defendant Sales exhibited deliberate indifference to his serious medical needs. As such, Plaintiff does not allege sufficiently specific facts to allow the Court to infer that Defendant Sales had subjective awareness of Plaintiff's objectively serious medical need or that Defendant Sales had an objectively insufficient response to Plaintiff's medical need. *Watters v. Terry*, No. 5:12-CV-196 (MTT), 2013 WL 3245208, at *3 (M.D. Ga. June 26, 2013).

Moreover, by Plaintiff's own representations taken as true for the purposes of Defendant Sales' motion to dismiss, he received nine sick-call appointments, at least two sets of x-rays, an MRI, physical therapy, and pain medication. And Plaintiff chose to stop physical therapy treatment on his own volition. These facts indicate that MSP staff attempted to implement a treatment plan, but that Plaintiff was

[3] Defendant Sales also states that Plaintiff "will be provided with a sick call request" pursuant to his grievance request. *Id.* at 21.

continuously unsatisfied with this plan. Plaintiff's unsatisfaction with his medical treatment does not constitute deliberate indifference. *Watters*, 2013 WL 3245208, at *3 ("Although Plaintiff disagrees with the course of his medical treatment, a mere disagreement about the course of one's treatment is a classic example of a matter for medical judgment that does not give rise to an actionable claim of deliberate indifference." (internal citations and quotations omitted)).

For these reasons, Plaintiff fails to state a claim for deliberate indifference against Defendant Sales. Defendant Sales is also entitled to qualified immunity, as discussed below.

*ii. Defendant Sales is Entitled to Qualified Immunity*

"[Q]ualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (internal quotation marks and citation omitted). "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (internal quotation marks and citation omitted).

"In order to receive qualified immunity, an official must first establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* (quotation marks omitted). To make that determination

"a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). Once the defendant shows that he was acting within his discretionary authority, the burden then shifts to the plaintiff to establish that qualified immunity does not apply. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). To meet this burden, Plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744, 757 (2014) (internal quotation marks and citation omitted).

Defendant Sales submits that, according to Plaintiff's own allegations, Sales was "doing his job as a prison official" when the allegedly wrongful acts occurred. Sales Br. 7. Plaintiff has not rebutted this assertion. Thus, the Court assumes that Defendant Sales was acting within his discretionary authority. As a result, the burden shifts to Plaintiff to show that Defendant Sales violated his constitutional rights. But, as discussed directly above, Plaintiff has not connected any of his allegations to Defendant Sales. Critically, Plaintiff asserts that he received medical treatment even before filing grievances or sending a letter to Defendant Sales. Accordingly, the Court finds that Plaintiff has not carried his burden to show that Defendant Sales violated his constitutional rights, thus Sales is entitled to qualified immunity on Plaintiff's deliberate indifference claim.

B. Plaintiff's ADA Claim

Defendant Sales argues that Plaintiff fails to state a claim against him under Title II of the ADA. Sales Br. 9-11. Defendant Sales also argues that he is entitled to Eleventh Amendment immunity. *Id.* at 8-9. The Court agrees that Plaintiff's claim is barred by the Eleventh Amendment, thus Plaintiff's ADA claim against Defendant Sales should be dismissed.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. State agencies and prisons are "public entities" which may be sued under the ADA. *United States v. Georgia*, 546 U.S. 151, 154 (2006). To state a claim under the Title II of the ADA,

> a plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007). "To recover compensatory damages, though, a plaintiff must additionally show (4) 'intentional discrimination or bad faith.'" *Vosburgh v. Humphrey*, No. 5:12-cv-299 (MTT), 2014 WL 533493, at *5 (M.D. Ga. Feb. 7, 2014) (quoting *Ortega v. Bibb Cnty. Sch. Dist.*, 431 F. Supp. 2d. 1296, 1299-1302 (M.D. Ga. 2006)).

Here, even assuming that Plaintiff succeeds in satisfying the first three elements, his claim for compensatory damages fails because he cannot show

intentional discrimination. "In the Eleventh Circuit, 'intentional discrimination' is properly evaluated under the standard of 'deliberate indifference.'" *Vosburgh*, 2014 WL 533493, at *7 (citing *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 344-48 (11th Cir. 2012) . To recover compensatory damages in an ADA claim, Plaintiff must show that the defendant "*knew* that harm to a federally protected right was substantially likely and [that the defendant] *failed* to act on that likelihood." *Id.*

Plaintiff fails to allege that Defendant Sales intentionally discriminated against him. Through his letter and grievances, Plaintiff made Defendant Sales aware of the shower conditions that led to Plaintiff's injury *after* the fall occurred. However, Plaintiff does not allege that Defendant Sales knew of Plaintiff's disability prior to the fall, nor does Plaintiff allege that Sales failed to act on the knowledge that harm to Plaintiff—as a result of his disability—was substantially likely. Without prior notice, Defendant Sales could not have been deliberately indifferent. *Vosburgh*, 2014 WL 533493, at *7 ("Without subjective knowledge of either Plaintiff's requests or of the general need for handrails, these Defendants could not possibly have been 'deliberately indifferent.'").

Thus, because Plaintiff failed to establish deliberate indifference—i.e., intentional discrimination—Plaintiff cannot recover compensatory damages. *Ortega*, 431 F. Supp. 2d. at 1299-1302. And, as discussed next, Plaintiff's claim is barred entirely by Defendant Sales' entitlement to Eleventh Amendment immunity.

The Eleventh Amendment bars actions against a State and State officials sued in their official capacities in federal court. *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) ("Eleventh Amendment immunity bars suits brought in federal court when

the State itself is sued and when an 'arm of the State' is sued."). The Eleventh Amendment is abrogated where the state has waived this immunity or where there has been a valid congressional override. *Ky. v. Graham*, 473 U.S. 159, 169 (1985); *Redding v. Ga.*, 557 F. App'x 840, 844 (11th Cir. 2014).

The ADA provides that a "State shall not be immune under the [E]leventh [A]mendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. "Although Congress has expressed an intent to abrogate Eleventh Amendment immunity, it also must act pursuant to a valid grant of congressional authority, which is found in Section 5 of the Fourteenth Amendment." *Parker v. Univ. of Ala. Police Dep't*, 759 F. Supp. 3d at 1193 (N.D. Ala. Dec. 10, 2024) (citing *Bd. of R. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363-64 (2001)); *see also Dupree v. Owens*, 92 F.4th 999, 1005 (11th Cir. 2024). "Under Section 5, Congress may (1) create a private right of action against the State for actual constitutional violations or (2) respond to 'a pattern of discrimination by the States' by passing legislation to remedy and deter Fourteenth Amendment violations." *Dupree*, 92 F.4th at 1006. "Thus, insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Georgia*, 546 U.S. at 159.

Here, Plaintiff does not allege a Fourteenth Amendment violation. And, as discussed above, Plaintiff failed to establish that Defendant Sales was deliberately indifferent to his serious medical needs. Thus, Plaintiff fails to state an Eighth

Amendment claim.[4] Because no actual constitutional violation has occurred, Title II of the ADA does not abrogate the Eleventh Amendment Immunity, and Plaintiff's claims are barred by the Eleventh Amendment. *Garner*, 2018 WL 9963836, at *8 (holding that a plaintiff's ADA claims were barred by Eleventh Amendment immunity where the plaintiff "failed to state a plausible claim for an *actual* constitutional violation.")

Absent an actual constitutional violation, the Eleventh Circuit has held that Title II creates a valid abrogation of Eleventh Amendment immunity in only two circumstances: claims of discrimination by public universities and claims of discrimination in public transport. *Ass'n for Disabled Ams., Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 957-59 (11th Cir. 2005); *Drayton v. McIntosh Cnty., Ga.*, No. CV 216-053, 2016 WL 3443919, at *10-13 (S.D. Ga. June 17, 2016). However, in the context of the penal system, the Eleventh Circuit relies on the "actual violation" standard. *See Redding*, 557 F. App'x at 844-45 (holding that Eleventh Amendment immunity bared the prisoner plaintiff's claims where he "did not show that the defendants' conduct violated [his] constitutional rights, so [the defendants] were entitled to Eleventh Amendment immunity against ADA claims"); *see also Garner*, 2018 WL 9963836, at *9 (applying the *Redding* standard for an ADA claim brought in the context of the penal system and finding the claim barred by the Eleventh Amendment because the plaintiff failed to show a constitutional violation); *Odom v.*

[4] Because the Eighth Amendment is applicable to the states through the Fourteenth Amendment, a violation of the Eighth Amendment also satisfies the actual violation requirement. *Georgia*, 546 U.S. at 157; *see also Dixon v. Toole*, 225 F. App'x 797, 798 (11th Cir. 2007) ("The Eighth Amendment, applicable to the states through the Fourteenth Amendment, forbids cruel and unusual punishments.").

*Fla. Dep't of Corr.*, No. 3:09cv570/MCR/CJK, 2014 WL 4079910, at *10 (N.D. Fla. Aug. 19, 2014) (same).

Because Plaintiff's claim occurs in the context of the penal system, and because he fails to state an actual constitutional violation, Defendant Sales is entitled to Eleventh Amendment immunity. Thus, it is recommended that Plaintiff's ADA claim against Defendant Sales be dismissed.

**CONCLUSION**

In summary, Plaintiff's motion for reconsideration as to appointment of counsel (ECF No. 25) and motion to appoint counsel (ECF No. 40) are denied. The Court concludes that Plaintiff fails to state an Eighth Amendment claim for deliberate indifference against Defendant Sales in his official capacity, and that Defendant Sales is entitled to qualified immunity, barring Plaintiff's individual capacity deliberate indifference claim. Further, Defendant Sales' entitlement to Eleventh Amendment immunity bars Plaintiff's ADA claim. Accordingly, it is recommended that Defendant's motion to dismiss (ECF No. 25) be granted and Defendant Sales dismissed from this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within FOURTEEN (14) DAYS after being served with a copy hereof. Any objection should be no longer than TWENTY (20) PAGES in length. The district judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED and RECOMMENDED**, this 29th day of July, 2026.

s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE